## LOUISVILLE & NASHVILLE RAILROAD COMPANY, Defendant-Appellant,

v.

## Paul WOLLENMANN and Mark Lant, d/b/a Westwind Inn, and all others evacuated, Plaintiffs-Appellees.

### No. 1–179–A–27.

Court of Appeals of Indiana, First District.

May 29, 1979.

Rehearing Denied July 24, 1979. See 392 N.E.2d 1000.

F. Wesley Bowers, David R. Joest, Bowers, Harrison & Kent, Evansville, for defendant-appellant.

Robert L. Simpkins, Evansville, for plaintiffs-appellees.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Louisville & Nashville Railroad Company (L&N) brings this appeal pursuant to Ind. Rules of Procedure, Appellate Rule 4(B)(5) and alleges that the Vanderburgh Superior Court erred when it conditionally certified the action brought by plaintiffs-appellees Paul Wollenmann and Mark Lant, d/b/a Westwind Inn, as a class action.

## FACTS

Money damages are sought on behalf of all persons evacuated from their homes and businesses after two railroad tanker cars filled with liquid propane overturned on May 20, 1978, in the Howell Railroad Yard in Evansville. L&N admitted that the Howell Yard was under its supervision and control on said date and that several thousand persons were evacuated from the area because of the threat of explosion and fire.

## ISSUES

L&N contends that the facts of this case do not satisfy the requirements set forth in Ind. Rules of Procedure, Trial Rule 23(A)(3) and (4), and 23(B)(3).

## DISCUSSION AND DECISION

T.R. 23(A) provides, in part, as follows:

"(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if

\* \* \* \* \* \*

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class."

With reference to T.R. 23(A), L&N summarizes its argument as follows:

"The named plaintiffs operated a business in the evacuated area but seek to represent a class containing persons evacuated from their homes; the claims of the named plaintiffs are therefore not typical of those of all of the class members as required by Ind.R.Tr.P. 23(A)(3) and the named plaintiffs are therefore unsuitable to represent the class of all persons evacuated under Ind.R.Tr.P. 23(A)(4)."

L&N, in essence, argues that the representatives of the class are required to have claims which are *identical* to those of all members of the class. This is not so. *Eisen v. Carlisle & Jacquelin*, (2d Cir. 1968) 391 F.2d 555; *In re Four Seasons Securities Laws Litigation* (W.D.Okl.1973) 59 F.R.D. 667, rev'd on other grounds (4th Cir. 1974) 502 F.2d 834; *Rodriguez v. Swank*, (N.D.Ill. 1970) 318 F.Supp. 289; *State of Minnesota v. United States Steel Corp.*, (D.Minn.1968) 44 F.R.D. 559; 3B J. Moore, Federal Practice ¶ 23.06–2 (2d ed. 1978); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1764 (1972).

The class representatives and all members of the class were evacuated. They were evacuated, allegedly, because of the negligence of L&N. The representatives do have claims, their claims have not been shown to be antagonistic in any way to

those of the class members, and L&N has made no argument that counsel for the representatives is unable to perform his duties.

We hold that the trial court did not err in ruling that the representatives' claims are typical of the claims of the class and that the representative parties will fairly and adequately protect the interests of the class.

T.R. 23(B)(3) provides as follows:

"(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition

\*    \*    \*    \*    \*    \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action."

L&N argues that the case at bar presents a novel theory of action and a class action is not a proper vehicle for promoting the development and refinement of a new theory of action.

L&N has been charged with negligence. The tort of negligence consists of three elements: (1) a duty owed by the defendant in relation to the plaintiff; (2) defendant's failure to conform its conduct to the standard of care dictated by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Miller v. Griesel* (1974) 261 Ind. 604, 308 N.E.2d 701. A wrongdoer is liable for all injuries which proximately result from his wrongful act. *Rondinelli v. Bowden*, (1973) 155 Ind.App. 582, 293 N.E.2d 812.[1]

Basic, well-recognized principles of law apply to this negligence case. We are not persuaded that the case presents such a novel theory of action that it is inappropriate for resolution in a class action.

L&N contends that only one common question of fact and law exists: "whether the May 20, 1978, derailment was caused by negligence on the part of L&N." For sake of analysis, we will accept this contention as true. L&N also emphasizes that the damages suffered by a business person may differ from those suffered by a resident.[2]

---

1. L&N suggests that people from a larger area than necessary may have been evacuated. No such allegation has appeared in any pleadings. Furthermore, such an issue would not, per se, be inappropriate for resolution in a class action.

2. The Court of Appeals for the Second Circuit acknowledged the possibility of differing characteristics of the class members in *Eisen v. Carlisle & Jacquelin* (2d Cir. 1968) 391 F.2d 555, 566, but concluded:

   ". . . Nevertheless, the alleged underlying conspiracy does contain a so-called 'common nucleus of operative facts.' *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722 (N.D. Cal.1967). *All of these differences among the class members bear only on the computation of damages*, a factor which, by itself,

does not justify dismissal of the class action. *Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42 (S.D.N.Y.1966); *City of Philadelphia v. Morton Salt Co.*, 248 F.Supp. 506 (E.D.Pa.1965). Potential rivalry between class members after an initial finding of liability can be adequately handled since the rule gives a court the power to divide the class into appropriate subclasses or to require the members to bring individual suits for damages. Fed.R.Civ.P. 23(c)(4); Advisory Committee's Note at 106. Even if individual questions arise during the course of litigation, which render the action 'unmanageable,' the court still has the power at that time to dismiss the class action and permit the plaintiff to proceed only on behalf of himself. Fed.R.Civ.P. 23(c)(1). . . ." (Our emphasis)

Assuming, arguendo, that damages will have to be proved for each class member, certainly the larger issue will be the question of negligent conduct. In *State of Minnesota v. United States Steel Corp., supra,* defendants were charged with violations of the antitrust laws. In considering the predominance of common questions of law and fact, the district court wrote, at page 569 of 44 F.R.D.:

"In determining 'predominance,' defendants attempt to establish as a test the total amount of time which will be spent on proof of the common issue of conspiracy in a class action compared to time spent on individual damage and fraudulent concealment proof in the trial of the same class action. They thus argue that the question of conspiracy does not predominate. If this be the correct approach to the question, arguably it is true that as a class action more time in toto will be spent in proof of individual damage claims in any of the class actions than will be spent in proof of conspiracy. Following defendants' line of reasoning, it would seem, however, that the situation should be considered and compared to that which would exist were no class action to be allowed. So for instance, if there were to be but a single case for trial, the court would expect that the great bulk of the time of that trial would be consumed with proof or the attempted proof of the existence and effect of a conspiracy and that the fraudulent concealment and damage issues would be far less predominant in the sense of time consumed at the trial. Were there to be 500 separate suits, this same pattern undoubtedly would prevail as to each. It seems specious and begging the question to say that if these 500 law suits were brought into a class so that proof on the issues of conspiracy need be adduced only once and the result then becomes binding on all 500, that thereby the common issue of conspiracy no longer predominates because from a total time standpoint, cumulatively individual damage proof will take longer. Of course, if defendants are upheld in their current posture of denying any conspiracy, then this is clearly the only issue that ever will be tried and certainly it cannot then be gainsayed [sic] but that such is the predominant question.

\* \* \*"

L&N steadfastly insists that the class action is not superior to other available methods of adjudication. L&N emphasizes the fact that no class members have sought to intervene as evidence that no substantial danger exists of multiple litigation. L&N also distinguishes the case at bar, based upon a theory of negligence, from those class actions which are premised upon intentional torts; L&N reasons that, while those other cases may have the salutary purpose of halting intentional wrongdoing, the *only* purpose of proceeding as a class action in the case at bar is to provide the benefit of an award of attorney fees and to make the litigation profitable.[3]

The evacuation of persons from 505 structures undoubtedly caused harm, for which L&N may or may not be liable. While no intentional wrongdoing appears to have been involved, that absence of intent will not free L&N from liability for negligence if liability otherwise exists. All parties involved have represented that the amount of individual claims does not warrant the expense which will be incurred in attempting to prove negligence. Although L&N foresees significant administrative problems, we conclude, based upon the present record, that administrative problems will not be

See also *Boehne v. Camelot Village,* (1972) 154 Ind.App. 21, 288 N.E.2d 771.

**3.** Judge Medina wrote in *Eisen v. Carlisle & Jacquelin* (2d Cir. 1968) 391 F.2d 555, 563:

"We are not persuaded that it is essential that any other members of the class seek to intervene. Absent class members will be able to share in the recovery resulting in the event of a favorable judgment, and, if they wish to avoid the binding effect of an adverse judgment they may in various ways and at various times that we need not now attempt to particularize, attack the adequacy of representation in the initial action or disassociate themselves from the case. . . ."

overwhelming. We cannot hold that the trial court erred in determining that the class action is superior to other available methods for adjudication.

Having carefully considered the arguments presented by L&N, and having given due regard to the early stage of the proceedings, we now hold that the trial court did not err in conditionally certifying this cause of action as a class action. This cause is remanded to the trial court for further proceedings consistent with this opinion.

LYBROOK and ROBERTSON, JJ., concur.