432 So.2d 1027 (1983)
LIVINGSTON PARISH POLICE JURY, et al.
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
No. 83 CA 0178.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied June 20, 1983.
*1028 James E. Kuhn, Denham Springs, Hobart O. Pardue, Springfield, Eric L. Pittman, Haydn S. Berey, Burgess & Lee, Livingston, Robert Morrison, Calvin Fayard, Denham Springs, Cynthia Fayard, Livingston, Dué, Dodson, deGravelles, Robinson & Caskey, Baton Rouge, Keith Rowe, Livingston, for plaintiffs.
H. Martin Hunley, Jr., John C. Reynolds, David S. Kelly, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendants.
Before COVINGTON, LANIER and ALFORD, JJ.
COVINGTON, Judge.
The plaintiffs, the Livingston Parish Police Jury and twenty-one individuals, brought this action, arising from a mass tort situation, on their own behalf and on behalf of residents of Livingston Parish. Further, the petition averred class representation on behalf of "all persons, firms and/or corporations who have and/or may sustain damage as a result of the evacuation, fires, explosions, toxic exposures and/or contaminations and all other losses caused or contributed to by a train derailment which occurred in or near the town of Livingston, Parish of Livingston, State of Louisiana, on September 28, 1982."
On October 18, 1982, the district court, on motion of plaintiffs' counsel, granted an order recognizing and maintaining the proceeding "as a class action within the intent and meaning of Article 591, et seq., Louisiana Code of Civil Procedure." The order also provided for the preparation and dissemination of notice of the class action to members of the class. The notice, in addition to the advice concerning the pendency of the proceeding, established certain procedures for opting out of the class.
Additionally, on October 22, 1982, the court below issued orders ancillary to the class action order, including the appointment of a "steering committee," the ordering of a management plan and the appointment of a court expert.
Then, on October 29, 1982, the defendants appeared and filed motions and exceptions aimed at setting aside the previous orders of the court and dismissing the action. The defendants particularly objected to the class action and to the appointment of the court's expert. Thereafter, pursuant to a writ of mandamus from this Court on January 24, 1983, the defendants were granted a devolutive appeal from the orders of the trial court.
In their statement of the issues, the defendants urge that the trial court committed error in the following respects:
1. In issuing ex parte orders relative to class action certification and ancillary issues.
2. In maintaining plaintiffs' claims as a class action.
3. In appointing, on its own motion, a court expert with fees and expenses to be taxed as costs.
This action, as stated above, arises out of a train derailment on September 28, 1982, in or near the town of Livingston in the Parish of Livingston, Louisiana. The derailment involved a number of rail cars of an Illinois Central Gulf Railroad (ICG) train. Following the event, it became necessary to evacuate a large number of people from the area for a considerable period of time. As a result of the derailment and the alleged damages resulting therefrom, the instant proceeding was filed.
Neither liability nor quantum are at issue at this stage of the proceeding. The only issues before us are the procedural questions of the availability of the class action and the propriety of the appointment of the court's expert.

CLASS ACTION
The first two issues are concerned with the availability of the class action and the *1029 means by which a class can be certified as such. We will consider these issues under this heading.
LSA-C.C.P. arts. 591[1] and 592[2] establish the pertinent requisites for a class action as follows:
1. The persons constituting the class are so numerous as to make it impracticable for all of them to become parties to the action.
2. The character of the rights sought to be enforced is common to all members of the class.
3. The joinder as party to the suit of at least one member of the class who is so situated as to fairly insure adequate representation for the class and the absent members of the class.
The Louisiana class action was adapted from the federal rules; however, the Federal Rule of Procedure (Rule 23) as originally promulgated was not fully adopted into our procedure. The so-called "true" class action was made a part of the Louisiana Code of Civil Procedure, LSA-C.C.P. arts. 591, et seq. The true class action of Louisiana was anticipated to be narrower in its breadth, with more stringent tests than the federal rules, which also embraced the so-called "hybrid" and "spurious" class actions, which types were not expressly brought into our procedural system. Nevertheless, primarily through the judicial constructions of Mr. Justice Tate[3] (now Judge Tate of the federal bench), as refined by Mr. Justice Dixon[4] (now Chief Justice of the Supreme Court of Louisiana), the Louisiana class action has been expanded to encompass most, if not all, situations involving a multiplicity of claims arising from a single incident or catastrophe when they meet the jurisprudential guidelines.
The Louisiana law formulating the class action procedure is not as explicit or inflexible as the federal rules. Our law provides rather simple, basic requisites, prescribing only that one or more members of a class, who will fairly insure the adequate representation of all members, may sue in a class action in behalf of all such members. Such an action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to be parties thereto, and the character of the right is common to all class members. The Louisiana approach to the class action procedure differs from the federal, which statutorily treats due process and adjective matters, in that such matters are dealt with as the need arises and in the manner expedient to the exigencies of the case at hand. The result of this jurisprudential approach has been an evolutionary case-by-case development wherein guidelines have been suggested without the imposition of a concretized procedure.
To illustrate, in the absence of a statutory provision concerning notification, the Supreme Court in Williams v. State, 350 So.2d 131 (La.1977), recognized that at some stage of the litigation (preferably in the early innings), the identifiable members of the class ought to be given reasonable notice of the pendency of the litigation and an opportunity to opt out or opt in the class action. In so noting, the Court then proceeded to delineate broad parameters within which such notification should be given, yet leaving it within the sound discretion of the trial judge in each case to determine how *1030 and when notice is to be given, subject, of course, to the parameters.
Appellants argue that the lower court erred in allowing the certification of the class (as well as certain ancillary issues) be made by an ex parte order. While the record does reveal that the trial judge signed an ex parte order pertaining to the certification of the class, such an order is of no moment since the certification of the class was properly put at issue by the peremptory exception filed by the defendants.
There is no prescribed statutory rule for certifying the class. In Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144 (La.1975), the Supreme Court treated this question under the heading "Procedural Vehicle to Question Class Action" and concluded that the objection could be raised by means of a peremptory exception. The peremptory exception procedure was also used in the Williams case. A contradictory rule procedure was used in State ex rel. Guste v. General Motors Corporation, 370 So.2d 477 (La.1979). It would seem that either means of raising the objection is practically sound, and, perhaps there are even other means of objecting. All that the law demands is that at some point in the proceedings the opposing party must be given a fair opportunity to question the availability of the class action.
In fact, it does not appear that the certification itself is imbued with an air of finality, since the Supreme Court in Stevens observed:
... [I]n the normal course of a class action, subsequent developments may indicate reasons for limiting or expanding the class, or for noticing the propriety or impropriety of the action under the developing facts, or of excluding members of the class who, after notice, do not want to join in the action. 309 So.2d at 152.
In the instant case a hearing was held on the objection to the availability of the class action. The parties were afforded an opportunity to present pertinent evidence. At the conclusion of the hearing, the trial court overruled the peremptory exception. We hold that there is no basis for appellants' complaint that the actions of the trial judge deprived them of an opportunity to test the propriety of the class action.
Appellants also contend that their peremptory exception attacking the availability of the class action should have been sustained by the trial court and the class action dismissed, because plaintiffs have not shown that they will or can fairly and adequately protect the interests of the class or that their claims are typical of the class and that plaintiffs have not shown that common questions predominate or that the class action is superior to other available means of adjudication.
The case, of course, has not yet been tried on the merits so the Court does not know what facts will be established by the evidence. It is alleged, however, that due to the train derailment Livingston residents were forced to evacuate and that many of them suffered extensive damages. It was estimated that some 3,000 people were adversely affected by the disaster, and that there was resultant extensive property damage (with various general types of damages being alleged). By certain testimony at the hearing, the plaintiffs explained the position of the Police Jury as a party plaintiff in the class action and the basis for certain individuals having been named as parties plaintiff.
The class, as constituted in the fourth amending petition, is described in paragraph 1, as follows:
This is a class action instituted pursuant to the provisions of LSA-CCP Article 591, et seq., by petitioners on their own behalf and as members of the class of all persons, firms and/or corporations residing, maintaining a place of business, employed or engaged in public functions in Livingston Parish and who or which have sustained damages or may incur damages arising or resulting from their said residence, business, employment, and attendance at or engagement in public functions, as a result of the train derailment which occurred in or near the Town of Livingston, Parish of Livingston, State of *1031 Louisiana, on September 28, 1982, including, specifically, the following:
a. All residents or domiciliaries of Livingston Parish who sustained physical, mental or emotional injuries, fright, inconvenience, and interruption of or intrusion into their personal lives and education by reason of the derailment and consequently events directly following therefrom;
b. All residents or domiciliaries of Livingston Parish who or which sustained property damage, lost earnings, lost profits and/or intangible business interruption losses, or who incurred expenses in lodging, meals, moving, cleaning, help or assistance and/or extra compensation for employees or special assistance as a result of the derailment and consequent events directly flowing therefrom; and
c. All non-residents or non-domiciliaries of Livingston Parish who were employed at a place of business or who owned or operated a place of business in Livingston Parish at the time of derailment and who or which sustained any losses of the type described in (a) and (b) above.
d. All public bodies, corporate and/or constitutional officers or offices domiciled in Livingston Parish which sustained damages of the nature enumerated in (a) and (b) above and for any communal damages accruing to the Town and Parish of Livingston.
After the hearing on the peremptory exception of ICG challenging the procedural use of the class action and following the testimony of the witnesses called in support of the class action, the trial judge overruled the exception, stating:
With regard to the exceptions to the class action, the evidence shows that several thousand residents of Livingston Parish were damaged by the derailment and evacuation of the area because of the derailment. While their claims are varied, the fact remains that these claims are definable within certain categories: Property damage, lost earnings or profits, physical and mental injuries. The fact that the value to their claims may be different does not mean that their claims cannot be asserted in a class action involving a mass tort such as this, as the Court understands Louisiana law to be.
There is a mutuality of these claims and a common interest among all the claimants and the issues of liability and the measure of damage to be applied to their claims. If these claims were made by each person in one lawsuit, there could be no doubt as to proper joinder and cumulation of actions. The only reason why this would not be feasible is that joinder would be impracticable under the circumstances of this case, and that is the reason why the Court feels that the class action should be allowed in this case.
A question has been raised as to whether the Livingston Parish Police Jury is a proper party in this class action. Mr. James Sibley, President of the Livingston Parish Police Jury explained the interest of the Police Jury in claiming damages to public property, in claiming damages to the community and the public as a whole, as well as in assuring even-handed treatment to the citizens of Livingston Parish. The Court feels that this evidence clearly shows that the Police Jury has a real interest in the lawsuit, and is a proper representative of all class members in a similar position with regard to damage to the public and to public property.
Therefore, the exceptions to the class action filed by the defendants are overruled.
Defendants contend that this group of plaintiffs does not fairly and adequately represent the interests of the class. They argue, first, that the public bodies included as plaintiffs-representatives cannot represent individual members of the class.
The position of the Police Jury in the instant case is analogous to that of the Attorney General in State ex rel. Guste v. General Motors Corporation, wherein the argument was made that the Attorney General should not be permitted to bring a class *1032 action on behalf of Louisiana consumers because he was not an adequate representative of the particular consumer class. The Supreme Court rejected this argument, pointing out that the powers of the Attorney General enabled him to use all of the codal procedures, including the class action. It has been held that police juries have the capacity to sue in their own names or in behalf of the parishes and to stand in judgment. Police Jury of LaSalle Parish v. Police Jury of Catahoula Parish, 145 La. 1053, 83 So. 250 (1919). The Police Jury also has powers enabling it to bring the class action. As a matter of fact, it appears to us that the Livingston Police Jury has a much stronger basis on which to stand than the state attorney general in the General Motors case since it allegedly is a member of the class of victims of the catastrophe. In General Motors there is no suggestion that Mr. Guste's office (or he personally) was the owner of a Chevroletized Oldsmobile automobile. It would seem also that the Police Jury would have standing to assert its claim for damages of a general community nature if such exist.
Appellants assert that mass accident cases are particularly unsuitable for class action treatment because such cases raise a multitude of individual issues which cannot be adjudicated on a class-wide basis. On this point, appellants cite federal and out-of-state cases, as well as a comment in the FRCP Advisory Committee Note to Rule 23. This assertion has been answered in Williams, at 136-137:
It is true that, because of these considerations, the federal advisory committee felt that "A `mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action" (italics ours), in recommending the 1966 revision of Federal Practice, Section 23.01[10.3].
Even for federal class actions, the observations of the advisory committee have been critized as functionally unsound while in mass food poisioning cases arising from a single incident the federal courts have found the class action to be an appropriate procedural vehicle by which to determine liability for and allocation of damages to individual members of the class affected.
In the present circumstances, the non-availability of a Louisiana class action is thus not suggested by whatever are the pragmatic or federal-jurisdictional reasons which suggest that a federal class action is "ordinarily" inappropriate to determine liability and damages arising from a mass accident. To the contrary, for the reasons previously noted, the present class action seems to be the most appropriate procedural vehicle to determine these numerous minor claims arising from a single incident. (footnotes omitted).
Illustrative of the distinguishing features of the cases (federal and out-of-state) cited by appellants is Rose v. Medtronics, Inc., 166 Cal.Rptr. 16, 19, 107 Cal.App.3d 150 (1980), wherein the Court remarked:
... In general, mass tort actions for personal injuries are not appropriate for class-action treatment (Federal Rules of Civil Procedure, Rule 23, Supplemental Notes of Advisory Committee, reported in 28 U.S.C.A. Rule 23, p. 299), in that the major elements in tort actions for personal injuriesliability, causation, and damagesmay vary widely from claim to claim.
... As the court said in [Yandle v. PPG Industries Inc. (1974) D.C., 65 F.R.D. 566]:
This case is very different from the single mass accident cases that have in the past allowed a class action to proceed on the liability issues. Those cases have normally involved a single tragic happening which caused physical harm or property damage to a group of people, and affirmative defenses are absent. Usually, one set of operative facts will establish liability.
In general, in those cases there was not a single act of negligence or single tragic happening and there were other factors, such as the great importance of the claims for wrongful death (for example, in aircraft disasters) to the claimants themselves and *1033 the consequent desire of such claimants to be represented by counsel of their own choosing, which distinguish such cases from the case at bar.
The most recent expression of a Louisiana appellate court which has been brought to our attention on the availability of the class action in a mass tort situation is Millet v. Rollins Environmental Services of Louisiana, Inc., 428 So.2d 1075 (La.App. 1st Cir. 1983). Millet was a case brought on behalf of some 1400 people living in the Bayou Sorrell area who claimed damages from toxic fumes and odors from defendant's hazardous waste deep-well disposal facility located in Iberville Parish. The defendants objected, by means of a peremptory exception, to the availability of the class action. In affirming the trial court's overruling of the exception, this Court considered five criteria as supporting the availability of the class action. These criteria may be stated as follows:
1. Requiring the institution of separate lawsuits would "pose a significant risk of inconsistent adjudications and earlier separate determinations with a prejudicial effect upon subsequent separate litigation."
2. Prosecution of separate actions would "pose a serious threat of substantially impeding the ability of class members to protect their interests." As in Guste, Williams and the case now before the Court, the vast majority of the claims are relatively small and those members with substantial damages are free to withdraw from the class action.
3. Any resistance of liability by the defendant would be applicable to all members of the class. There are no specific defenses which could be asserted against some and not against the others, but even if there were the fact remains that the defendant's defense will be applicable to all plaintiffs.
4. There are common issues of law and fact which predominate over those issues which might pertain to individual claims. Even so, the fact that there may be varying degrees of damage does not preclude use of the class action.
5. The class action is the superior procedural vehicle for the fair and efficient adjudication of the controversy because:
a. The vast majority of the class members have no interest in controlling the litigation.
b. The lack of individual lawsuits already filed would allow the court to process all of the claims in one proceeding.
c. It is desirable to concentrate all the litigation in one forum.
d. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to class members and permit distribution of the recovery, if any.
We consider that the instant case is an analogous situation and we find that all five of the Millet criteria are present. On this issue, we will further comment that under the present circumstances the prosecution of numerous separate actions would pose a serious threat of substantially impeding the ability of class members to effectively protect their interests. Although the Supreme Court in Williams merely stressed the small value of the individual claims and the poverty of the isolated class members, we believe that even though the members of the class herein may not be impoverished or isolated, a substantial number of their claims for damages appear to be relatively small so that they in all likelihood would not be prosecuted as individual lawsuits.
As noted in Stevens cited above, the ultimate judgment of the trial court in deciding whether or not to maintain the class action is to ascertain if the class action will clearly be more useful than other available procedures for a definite determination of a common-based right in the interests of the class and of the opponents to the class, and in the furtherance of the efficient operation of the judicial system.
The Supreme Court summarized in Stevens the intertwined values of effectuating substantive law, judicial efficiency, and individual *1034 fairness involved in allowing or disallowing a class action, as follows:
In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort, implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. Determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claim of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action.
Of what value is a device denominated "class action" if it is unavailable in the very situation where its peculiar procedural features are so eminently suitable to the expeditious and economical use of the overburdened judicial machinery and to providing a judicial forum to persons to whom such an opportunity might otherwise be denied? To declare that the mass tort situation is not a proper situation for the class action is to eviscerate the action. We will have none of it! The major single catastrophe is the perfect situation for which the law should call upon the class action. It is a utile remedy which can well serve all parties and the courts in achieving the ultimate truth in a given difficult situation. The class action provides a simple means to redress wrongs which affect numerous individuals and it promotes judicial economy by allowing for the adjudication of numerous claims in the same action.
Under the circumstances shown in the instant case, the values set forth above clearly favor allowance of the class action. We thus hold that the trial court properly held that the class action is available in the case at bar. See State ex rel. Guste v. General Motors Corporation.

COURT'S EXPERT
Turning now to the question of the appointment of the court's expert, the record reveals that on October 29, 1982, after a conference with all counsel on this issue, the trial judge entered the following decision:
The occurrence of the train derailment in Livingston, Louisiana, on September 28, 1982, and the fires, explosions and community evacuation resulting from this accident have all been of such magnitude as to absorb the constant attention of residents in the Livingston and surrounding areas since the first date.
This Court has received repeated reports of damage, inspections, tests and so forth being made by state agencies, by the railroad involved and by various experts and others who have appeared in the area. While the Court has not had the benefit of any of the conclusions reached by these various investigations, it is clear to the Court that there is an urgent need for an impartial and adequate investigation into all aspects of damage which might have been caused by this derailment so that this Court will be in a position to make a fair and impartial assessment of the damage, if and when the need should arise in this action. It appears to be inviting folly for the Court to wait until the case is being tried to attempt reconciliation of the multitude of reports, opinions and estimates which will *1035 no doubt be placed before the Court. It seems far better for an independent investigation to be made while the evidence is fresh and at hand. The Court has expressed its feelings on the matter to all counsel who are present at a conference with the Court this morning. This conference was called by the Court on the Court's own motion to appoint independent experts when it came on for hearing. And as a result of this conference, the Court has made the following decisions:
1. The Court appoints Gulf South Research Institute to provide expert services in the investigation of all aspects of damage resulting from the Livingston train derailment on September the 28th, 1982, including the physical, sociological, economic, ecological and psychological aspects thereof.
2. The Court further orders Gulf South Research Institute to submit to the Court within fifteen (15) days from the date of this order a proposal for the investigation to be undertaken and the estimated costs thereof.
3. Upon receipt of the proposal from Gulf South Research Institute, copies thereof will be circulated among counsel for all parties appearing of record in these proceedings or known to be representing any parties herein.
4. If within ten (10) days after the circulation of the proposal, there has been no written objection to the investigation filed in the record of this proceeding, the Court will order the investigation to proceed forthwith.
5. If proper objection is timely made, the Court will consider the objection and either issue an order calling for further hearings on the matter or will issue the order referred to above.
In essence, that's what I explained to you gentlemen in the conference previous to us coming into the courtroom.
In due course, GSRI submitted a budget proposal for undertaking the work envisioned by the order of the trial judge, which was broken down into general areas of investigation. As stated by defendants in their brief, all parties were afforded an opportunity to object to the court's appointment of its own expert. On the objection by the defendants, a hearing was held by the court, following which the trial judge ordered its expert, GSRI, to proceed with the areas of investigation designated as Task I and Task VI.
The trial judge has discretionary power and authority to appoint experts to assist him in resolving issues requiring expertise in a lawsuit. LSA-C.C.P. art. 192.
LSA-C.C.P. art. 192 provides:
A trial court, on its own motion ... may appoint persons learned or skilled in a science, art, profession, or calling as experts to assist it in the adjudication of any case in which special knowledge or skill may aid the court. The reasonable fees and expenses of these experts shall be taxed as costs of court.
The work assigned to GSRI as Task I (Review) is the kind of work in an area calling for expertise which can be helpful to the trial judge in a suit of this nature. As outlined by Dr. Rosebrook:
The review task is meant to do somewhat more than review. It is meant to in the review sense, examine the data that is available, taken by any other agency or organization. To look at it for its completeness, to attempt to make a judgment as best one can from reviewing records as to its validity, to attempt to find out whether or not there are information gaps, whether or not there are, perhaps samples which should have been taken, which might have been overlooked or whether or not sufficient samples were taken, or whether or not all the proper tests have been completed. In addition to that, the review task is meant to provide a frame work for conduction the remaining tasks, such as preparing detailed maps and grids for those maps for not only for appropriateness (sic) or sampling in an ecological sense but eventually to attempt to, would be used to lay out zones of damage in cases of physical damage, would be used for selection of, statistically sound sample in order to do any *1036 survey work for economics or psychology or so forth. It is meant to provide the basis information by which to conduct the rest of the task, whether it's, has to be generated during that task or whether it is a review of what is already generated.
The review work in all probability will facilitate the accomplishment of the trial court's evaluation of the damages sustained as a result of the derailment. This is certainly ample justification for the court to appoint its own expert in this case. There is no merit in appellants' objection to the appointment.
Accordingly, for the reasons assigned above, the decision of the trial court is affirmed at the appellants' costs, and the case is remanded to the trial court for further proceedings.
AFFIRMED.
NOTES
[1] LSA-C.C.P. art. 591 provides:

A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
[2] LSA-C.C.P. art. 592 provides:

One or more members of a class who fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
[3] Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144 (La.1975) and Williams v. State, 350 So.2d 131 (La.1977).
[4] State ex rel. Guste v. General Motors Corporation, 370 So.2d 477 (La.1979).