MARVIN SMITH et al., All Indiv. and as Representatives of All Persons and Entities Who Are Members of the Class Described Herein, Plaintiffs-Appellees, v. ILLINOIS CENTRAL RAILROAD COMPANY, d/b/a Canadian National/Illinois Central Railroad, Defendant-Appellant.

Fifth District   No. 5—04—0411

Opinion filed December 27, 2005.

946

WELCH, J., dissenting.

Kurt E. Reitz, Robert J. Wagner, and Heath H. Hooks, all of Thompson Coburn LLP, of Belleville.

Joseph M. Leberman, of Bryant & Kautz, P.C., of Marion, and JoDee Favre, of Law Office of JoDee Favre, and Edward J. Kionka, both of Belleville, for appellees.

JUSTICE DONOVAN delivered the opinion of the court:

The plaintiffs filed a negligence action against the defendant, Illinois Central Railroad Company, doing business as Canadian National/ Illinois Central Railroad (the railroad), in the circuit court of Perry County, Illinois, on behalf of themselves and those persons and businesses who sustained personal injuries and property damages as a result of the derailment of the railroad's freight train in Tamaroa, Illinois, on February 9, 2003. The plaintiffs moved to certify the case as a class action. The circuit court granted the motion and the railroad appealed. On appeal, the railroad contends that the circuit court applied an erroneous legal standard or abused its discretion in finding that the class satisfied the commonality and numerosity requirements for class certification, and it further contends that the order certifying the class must be reversed because the class definition does not specify the conditions for class membership in clear and objective terms.

## I. BACKGROUND AND PROCEDURAL HISTORY

According to the record, 11 plaintiffs sought to bring an action against the railroad in the circuit court of Perry County on behalf of themselves and those persons and businesses who sustained injuries

and damages as a result of the derailment of the railroad's freight train in Tamaroa, Illinois. The complaint contains counts for negligence, *res ipsa loquitur*, nuisance, abnormally dangerous activity, and trespass. It includes the following factual allegations. On Sunday, February 9, 2003, 21 cars on the railroad's northbound freight train derailed in Tamaroa, Illinois. Tank cars carrying hydrochloric acid, vinyl chloride, methanol, and a methanol/formaldehyde mixture ruptured, and the contents thereof were spilled into the surrounding environment, including the ground, water, and air. Some of the cars containing methanol caught fire and burned. As a result of the chemical spill, the area within a three-mile radius of the derailment was subject to a mandatory evacuation and more than 1,000 Tamaroa residents were evacuated. Additional discharges or leaks occurred at the derailment site subsequent to February 9, 2003, including on February 20, 2003, and May 7, 2003.

The plaintiffs moved for class status and the railroad objected. Following a hearing, the circuit court granted the motion to certify the class. The certification order identified the class as follows: "All persons, firms, and legal entities residing, maintaining a place of business, owning property, employed or attending school, or otherwise present in or in the vicinity of Tamaroa, Illinois, or its environs on or after February 9, February 20, or May 7, 2003, and who or which have sustained legally cognizable compensatory or punitive damages or may incur or may claim to have incurred legally cognizable compensatory or punitive damages as a proximate result of the Canadian National train derailment which occurred on February 9, 2003, in Tamaroa, Illinois." The railroad sought interlocutory review. We initially denied the railroad's petition for leave to appeal on August 12, 2004. The railroad then petitioned for leave to appeal to the Illinois Supreme Court. The Illinois Supreme Court denied the petition but issued a supervisory order directing this court to vacate the order denying interlocutory review and to consider the class certification issue on the merits. *Smith v. Illinois Central R.R. Co.*, 212 Ill. 2d 554, 817 N.E.2d 893 (2004) (supervisory order).

## II. ANALYSIS

### A. The Class Certification Requirements

■ Created in the English courts of chancery as a convenient tool to afford partial justice to parties unable to join under the then-compulsory joinder rules, class action suits have been recognized as an acceptable method in appropriate cases to advance the efficiency and economy of litigation, which is a principal purpose of the procedure. See *Hansberry v. Lee*, 311 U.S. 32, 41-42, 85 L. Ed. 2d 22, 27, 61 S. Ct.

115, 118 (1940); 1 A. Conte & H. Newberg, Newberg on Class Actions § 1:6, at 25 (4th ed. 2002). The recognized objectives of class actions include judicial economy and efficiency, the protection of defendants from inconsistent obligations, the protection of the interests of absentees, access to judicial relief for small claimants, and enhanced means for private attorney general suits to enforce laws and deter wrongdoing. 1 Newberg on Class Actions § 1:6, at 27-28.

■ In Illinois, class certification is governed by section 2—801 of the Code of Civil Procedure (735 ILCS 5/2—801 (West 1998)). Under section 2—801, a class may be certified only if the proponent establishes the following: (1) the class is so numerous that a joinder of all members is impracticable, (2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members, (3) the representative parties will fairly and adequately protect the interest of the class, and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2—801 (West 1998). Section 2—801 is patterned after Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23), and the federal decisions interpreting Rule 23 constitute persuasive authority for class certification issues in Illinois. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125, 835 N.E.2d 801, 819 (2005); *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 341, 371 N.E.2d 634, 644-45 (1977). Decisions regarding class certification are within the sound discretion of the trial court and should be overturned only where the court clearly abused its discretion or applied impermissible legal criteria. *McCabe v. Burgess*, 75 Ill. 2d 457, 464-65, 389 N.E.2d 565, 568 (1979).

## B. The Commonality Requirement

■ "Commonality" requires that there be questions of fact or law common to the class that predominate over other questions affecting only individual class members. 735 ILCS 5/2—801 (West 1998); *Steinberg*, 69 Ill. 2d at 338, 371 N.E.2d at 643. A single issue common to all members of the class will satisfy the requirement if it predominates. 1 Newberg on Class Actions § 3:10, at 273-74; 5 Newberg on Class Actions § 17:10, at 321. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if it is based on the same legal theory. 1 Newberg on Class Actions § 3:15, at 335-56.

A class action can properly be prosecuted where the defendant allegedly acted in the same basic manner with respect to an entire class, and it will not be defeated solely because of some factual variations

among the grievances of class members. *Steinberg*, 69 Ill. 2d at 340-41, 371 N.E.2d at 644; *Saldana v. American Mutual Corp.*, 97 Ill. App. 3d 334, 337, 422 N.E.2d 860, 862 (1981). In order to satisfy the commonality requirement of section 2—801, it must be shown that " 'successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members.' " *Avery*, 216 Ill. 2d at 128, 835 N.E.2d at 821, quoting *Goetz v. Village of Hoffman Estates*, 62 Ill. App. 3d 233, 236, 378 N.E.2d 1276, 1279 (1978).

On appeal, the railroad contends that the circuit court applied an "unprecedented and erroneous legal standard" in determining that there are questions of fact or law common to the class which predominate over questions affecting the individual class members. In support of its contention, the railroad suggests that personal injury actions should not be certified as class actions because those actions would trigger an unworkable array of factually-intensive-and-claimant-specific questions and would "inexorably devolve" into hundreds of minitrials that defy class treatment.

We reject the contention that the circuit court employed an "unprecedented and erroneous legal standard" in determining the commonality issue, for a number of reasons. First, the record clearly illustrates that the circuit court carefully considered whether the factual issues and the elements of the legal theories alleged were subject to class-wide proofs versus individual proofs and whether the class-wide questions were predominant. Next, we are unaware of any blanket declaration by any court, state or federal, stating that class certification may be denied simply because an action may be classified as a mass tort.

Historically, the courts were reluctant to employ class certification in mass tort cases on the grounds that plaintiffs who assert personal injuries or wrongful death should be permitted to control their own actions and that significant questions regarding damages and affirmative defenses would require multiple minitrials, but that no longer appears to be the prevailing view. See 5 Newberg on Class Actions § 17:5, at 309-10. In fact, we have reviewed a number of state and federal decisions wherein the reviewing court found the class action suit to be the most appropriate procedural vehicle for the management of an action based on a single catastrophic incident such as a train derailment. For a representative, but admittedly noncomprehensive, sample of such decisions, see *Sala v. National R.R. Passenger Corp.*, 120 F.R.D. 494 (E.D. Pa. 1988) (an Amtrak train derailment); *Summons v. Missouri Pacific R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991) (an overturned chemical tank car); *Louisville & Nashville R.R. Co. v. Wollenmann*,

180 Ind. App. 588, 390 N.E.2d 669 (1979) (overturned tanker cars filled with liquid propane); *Livingston Parish Police Jury v. Illinois Central Gulf R.R. Co.*, 432 So. 2d 1027 (La. App. 1983) (a train derailment); *Reynolds v. CSX Transportation, Inc.*, 55 Ohio App. 3d 19, 561 N.E.2d 1047 (1989) (a train derailment with phosphorous fire).

In the *Reynolds v. CSX Transportation, Inc.* case, the Ohio Court of Appeals affirmed the circuit court's decision to grant certification in an action for money damages instituted on behalf of persons evacuated from their homes and businesses after a tanker car containing phosphorous derailed and its contents caught fire, sending a thick cloud of smoke through a number of residential and commercial districts beyond the site of the derailment. *Reynolds*, 55 Ohio App. 3d 19, 561 N.E.2d 1047. The appellate court found that all the prerequisites for class action status had been satisfied for five subclasses and that the trial court did not abuse its discretion in determining that the issues of negligence and malice predominated over the individualized issues of proximate cause and compensatory damages. *Reynolds*, 55 Ohio App. 3d at 24, 561 N.E.2d at 1052.

In *Livingston Parish Police Jury v. Illinois Central Gulf R.R. Co.*, another case involving a train derailment and mandatory evacuation, an action was filed on behalf of the residents of Livingston Parish who alleged personal and property damages as a result of a train derailment and the forced evacuation of 3,000 residents. *Livingston Parish Police Jury*, 432 So. 2d 1027. In that case, the Illinois Central Gulf Railroad Company argued that a mass accident case was unsuitable for class action treatment. The lower court rejected the railroad's assertion and the appellate court affirmed. The appellate court determined that class certification was appropriate where the action arose from a single event and the prosecution of numerous separate actions would seriously threaten the ability of individual class members with relatively small claims to protect their interests. *Livingston Parish Police Jury*, 432 So. 2d at 1032-34.

Our research also yielded cases wherein class certification was deemed appropriate in mass tort actions alleging exposures to hazardous substances. See, *e.g.*, *LeClercq v. Lockformer Co.*, No. 00—C—7164, order at 5-6 (N.D. Ill. February 28, 2001) (memorandum opinion and order); *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *Olden v. LaFarge Corp.*, 203 F.R.D. 254 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004).

In *LeClercq v. Lockformer Co.*, a federal district court in Illinois granted class action status in a mass tort case involving trichloroethylene contamination, finding that the proof regarding the defendant's history of operations, the spillage, the level and duration of the

contamination, the impact on the land, soil, and water, and possible remedies would be identical and that the amount of damages sustained by each class member could be reserved for individualized treatment. *LeClercq*, order at 5-6 (and cases cited therein).

In *Sterling v. Vesicol Chemical Corp.*, the Sixth Circuit Court of Appeals affirmed the district court's decision to certify an action filed on behalf of residents who lived near the defendant's landfill and who allegedly suffered personal injuries and property damage from exposure to chemicals leaking from the defendant's landfill, finding that almost identical evidence would be required to establish the defendant's liability and the level and duration of contamination and that the single issue distinguishing the class members—the amount of damages that each resident sustained—could be reserved for individualized treatment. *Sterling*, 855 F.2d at 1197. The Sixth Circuit stated, "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling*, 855 F.2d at 1197.

In *Olden v. LaFarge Corp.*, the Sixth Circuit affirmed the district court's decision to grant class certification in an action filed against a cement manufacturing plant on behalf of nearby homeowners who alleged that they sustained personal injuries and property damages caused by toxic cement dust spewed from the plant. *Olden*, 383 F.3d at 508-11. The Sixth Circuit determined that there were common issues, including the defendant's conduct, foreseeability, and the fact of damages resulting from toxins, which predominated over the individual issues and that the individualized personal medical issues and minor property damages could be dealt with in the damages phase. *Olden*, 383 F.3d at 508-11.

In the aforementioned catastrophic-incident cases, a court found that the putative class members' claims arose from the same course of conduct and a common nucleus of operative facts so that almost identical evidence would be required to establish the defendant's liability and that the liability issues predominated over the individual questions of proximate cause and damages. In each case, a court considered the objectives of the class action and concluded that even if the action should evolve into a series of minitrials on damages, the resolution of the common issues would represent a substantial savings in time and resources and that the application of the class action device should be given serious consideration. These cases clearly illustrate that the commonality requirement can be met despite the differences in individual claims of injuries and damages. The railroad's claim that the circuit court applied an unprecedented and erroneous legal

standard in considering the commonality requirement is without merit.

The railroad also contends that the circuit court abused its discretion in finding that the plaintiffs satisfied the commonality requirement for class certification.

■ In this case, the circuit court determined that there were common questions, "including the legal duties owed to the proposed plaintiffs; all liability questions relating to the cause of the occurrence; whether Canadian National breached duties owed to persons in the vicinity of the spill; the nature of the chemicals; the types of damages that are related to the chemicals in question; [and] the effect of these chemicals on persons and property." The court also determined that the common questions predominate over questions involving individual class members.

According to the record, the fact of the derailment is common to all potential class members. The court correctly concluded that the railroad's liability could be determined on a class-wide basis because the claims arise from a single catastrophic event with a common nucleus of operative facts. In the absence of class action status, each claimant would be required to prove the facts surrounding the derailment, the railroad's history of operations, the railroad's breach of duty, the content of the substances spilled, the level and duration of the contamination, including the impact upon the land, soil, water, and real property, and the causal connection between human exposure to the chemicals and contaminants and the types of injuries suffered.

In our view, requiring the parties to litigate the same liability issues over and over would be an extraordinary waste of judicial resources and would impose an extreme burden on the court and the jurors of Perry County. According to the numbers from the Administrative Office of the Illinois Courts, the Perry County circuit court disposed of 106 law cases in 2004, 4 of which were terminated by jury verdict, and 419 law cases were pending; in 2004, the average time from filing to jury verdict was 24.4 months. Administrative Office of the Illinois Courts, 2004 Annual Report of the Illinois Courts, Statistical Summary 55, 56. In 2003, the court disposed of 123 law cases, 3 of which were terminated by jury verdict (Administrative Office of the Illinois Courts, 2003 Annual Report of the Illinois Courts, Statistical Summary 55), and in 2002, the court disposed of 101 civil cases, 2 of which were terminated by jury verdict (Administrative Office of the Illinois Courts, 2002 Annual Report of the Illinois Courts, Statistical Summary 55). The prospect of filing an additional 200 to 1,000 jury cases could overwhelm the court system. In terms of deciding the most appropriate and efficient way to proceed with this case, due deference

ought to be given to the judge assigned to this circuit, who routinely handles case-management issues, knows the docket, and is intimately familiar with the pending case and the lawyers and parties involved and consequently is in a superior position to analyze the difficulties of class actions and anticipate the challenges of the pending case.

The issues distinguishing the class members are the extent of each member's exposure to harmful contaminants and the resulting personal injuries and property damages sustained. If differences in the amounts of individual damages would make a class action improper, a class action for damages would never be possible because variations in the amounts of damages among class members are inevitable. 1 Newberg on Class Actions § 3:16, at 370. Decades ago, the Illinois Supreme Court recognized that the commonality requirement is not destroyed merely because there are individual questions peculiar to some members. *Steinberg*, 69 Ill. 2d at 340-42, 371 N.E.2d at 644-45. Giving a nod to the pathway cut by the federal courts, the supreme court stated that various procedures, such as the establishment of subclasses or split trials where the same jury considers individualized or grouped damages claims after the common issues have been resolved, could be utilized to resolve individualized questions. *Steinberg*, 69 Ill. 2d at 340-42, 371 N.E.2d at 644-45.

In this case, the record reveals that the circuit court's finding that the liability issues are predominant and pervasive in the class is supported in the record. A class action would be a fair and efficient method for disposing of the litigation because it would resolve the predominant issues, thereby avoiding a multiplicity of suits and possible inconsistent results. If the fact finder determines the liability issues in favor of the railroad, then the case is over. If the fact finder finds in favor of the class, then there will be individual issues remaining with respect to the damages. In either case, judicial economy will be preserved because the common issues constitute a significant and substantial part of the litigation, the resolution of which will advance the resolution of the controversy. We find no abuse of discretion.

## C. The Numerosity Requirement

■ The railroad also claims that the class does not encompass a sufficiently numerous group of persons or entities who have common and cognizable exposure claims. In order to satisfy the prerequisites for the maintenance of a class action, the representatives must show that the class is so numerous that the joinder of all members is impracticable, but they need not show that a joinder is impossible. 1 Newberg on Class Actions § 3:4, at 230. The impracticality of a joinder must be determined in the context of the particular litigation, because

there is no magic number that clearly defines numerosity. See 1 Newberg on Class Actions § 3:3, at 225; *Wood River Area Development Corp. v. Germania Federal Savings & Loan Ass'n*, 198 Ill. App. 3d 445, 449-50, 555 N.E.2d 1150, 1153 (1990). Some evidence of the number of class members must be shown, but the exact class size is not required, and a good-faith estimate is sufficient when the number of class members is not readily ascertainable. See 1 Newberg on Class Actions § 3:5, at 233; see also *Livingston Parish Police Jury*, 432 So. 2d at 1030 (the plaintiffs' estimate that some 3,000 residents were adversely affected by the train derailment and suffered property damages was sufficient to meet the numerosity requirement for class certification); *Sala*, 120 F.R.D. 494 (a class of 40 to 50 passengers allegedly injured as a result of the derailment of an Amtrak train was sufficient to satisfy the numerosity requirement); *LeClercq*, order at 3-4 (in a mass tort case alleging the release of hazardous substances from a landfill, the numerosity requirement was met where the plaintiffs alleged that more than 100 homes were affected and plaintiffs submitted a list of 130 clients who lived in the proposed geographic area); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (the court found that a potential class of 129 to 300 members met the numerosity requirement where the plaintiffs' estimate was established through public documents and commonsense assumptions).

■ When the number of class members is fairly small, courts have required a demonstration of additional reasons why a joinder is impractical. *Wood River Area Development Corp.*, 198 Ill. App. 3d at 450-51, 555 N.E.2d at 1153-54. These additional reasons include the class members' geographical distribution, the ability to identify and locate putative class members, the degree of knowledge and sophistication of the class members and their need for protection, the amounts of the claims of individual class members, and the nature of the cause of action. *Wood River Area Development Corp.*, 198 Ill. App. 3d at 450-51, 555 N.E.2d at 1153-54; *Kulins v. Malco, A Microdot Co.*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038, 1046 (1984).

■ In the case at bar, the circuit court found that the numerosity requirement was met where the record showed that potential claimants number in the hundreds. The court also found that the costs of litigation would make it economically unfeasible for many of the potential claimants with small or modest damages to bring an individual action. The record supports these findings. The plaintiffs' counsel has represented that more than 430 individuals have signed representation agreements and that more than 200 of those have not signed releases. It is also estimated that approximately 1,000 people

were impacted by the derailment and the evacuation. Given the Perry County circuit court's current docket and the plaintiffs' estimate of potential claimants, it appears that hundreds of additional individual suits would be unmanageable and could potentially cripple the Perry County circuit court. See *Kulins*, 121 Ill. App. 3d at 530, 459 N.E.2d at 1046. The record suggests that the putative class members in the case at bar are not easily identified and located for purposes of joinder and have varying claims values. The record also suggests that the class members are diverse and not particularly sophisticated in the litigation process. Despite the diversity, there is no indication that the named plaintiffs are inadequate class representatives or antagonistic to any unnamed persons or business entities. The trial court did not abuse its discretion in concluding that the numerosity requirement has been met.

### D. The Class Definition

■ Next, the railroad contends that the class certification must be reversed because the class definition is "unworkably overbroad." More specifically, the railroad complains that the term "vicinity" and "environs" are not defined by geographic borders and that the limitation of membership to those who have sustained legally cognizable claims makes membership contingent upon whether a given person's claim is meritorious, and not objectively ascertainable without individualized fact-finding.

A class must be sufficiently defined so that it is identifiable. An identifiable and definite class exists if it is defined in terms of objective criteria for membership. *LeClercq*, order at 2; *Gomez v. Illinois State Board of Education*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). A court has broad discretion to limit or redefine the class definition to correct deficiencies. *Gomez*, 117 F.R.D. at 397; 2 Newberg on Class Actions § 6.17, at 633.

Initially, we note that the circuit court did not have an opportunity to consider the railroad's objections. A preliminary review of the record leads us to conclude that any alleged deficiencies may be corrected. For example, the railroad contends that the class definition makes membership contingent upon whether a potential member's claim is meritorious. Neither the parties nor the court should be required to delve into the merits of the case to determine membership in the class. *LeClercq*, order at 2. In order to alleviate any misconception that the phrase "persons who have sustained legally cognizable compensatory or punitive damages" requires a finding that membership requires proof of a meritorious claim, alternative language, such as "persons who make good-faith allegations that they have sustained

compensatory or punitive damages," may be substituted. Likewise, "the vicinity" may be geographically delineated or further described. Rather than modify the definition at this stage, we refer this matter back to the circuit court to consider the objections and appropriate modifications in light of our discussion.

## III. CONCLUSION

On this record, the circuit court concluded that a class action could best secure the economies of time, effort, and expense and promote the uniformity of decisions, while accomplishing the other ends of equity and justice that class actions seek to obtain. The record supports the court's determination to certify the class. Because the class action device is flexible, it may be modified to accommodate newly discovered facts as they arise. See *Steinberg*, 69 Ill. 2d at 338, 371 N.E.2d at 643; *Gordon v. Boden*, 224 Ill. App. 3d 195, 202-03, 586 N.E.2d 461, 466 (1991).

Accordingly, the circuit court's decision to grant class certification is affirmed, and the cause is remanded to the circuit court with directions to consider the railroad's stated objections to the wording of the class definition and to make appropriate modifications in light of our discussion.

Affirmed; cause remanded with directions.

CHAPMAN, J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent. I believe the circuit court abused its discretion in certifying this class because the questions of law and fact common to the class do not predominate over any questions affecting only individual members. See 735 ILCS 5/2—801(2) (West 2004). This is precisely why no Illinois appellate court has ever approved class certification under circumstances similar to the case at bar.

Section 2—801(2) of the Illinois Code of Civil Procedure requires that, in order to be certified as a class action, the questions common to the class must *predominate* over any questions affecting only individual members. 735 ILCS 5/2—801(2) (West 2004). This is rarely true in mass tort personal injury actions and it is not true in the case at bar. The drafters of Federal Rules of Civil Procedure 23(b)(3), after which our rule is patterned, knew this:

> "A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability

and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." Fed. R. Civ. P. 23(b)(3), Notes of Advisory Committee on Rules.

In *Morrissy v. Eli Lilly & Co.*, 76 Ill. App. 3d 753, 759 (1979), the appellate court also recognized that mass tort actions for damages do not lend themselves to class action status but belong to the type of action whose proof requirements preclude class maintenance. See also *Mele v. Howmedica, Inc.*, 348 Ill. App. 3d 1, 22-24 (2004).

In *Morrissy*, 76 Ill. App. 3d at 759, the appellate court distinguished between the type of class action arising out of a mass accident in which a number of people in an isolated condition sustain injuries suddenly under similar circumstances, where a class may be properly certified, from one such as the case at bar in which different kinds of injuries are alleged to have occurred under different circumstances to various class members and to continue for prolonged periods of time. The case at bar involves claims for personal injuries, emotional injuries, and property damages, some premised on an exposure to toxic chemicals, some premised on the evacuation, by claimants who were located at different distances from the derailment site, some inside homes or vehicles, some outside, some with preexisting conditions, some without. It does not involve, for example, an airplane accident where the class consists of passengers killed or injured in the accident. In the case at bar, determinations of proximate cause and the existence and extent of damages predominate over any common issues. Furthermore, some of the class members signed releases after receiving compensation from the defendant, and the validity and extent of these releases must be litigated with respect to each such class member.

While, as the majority states, a single issue common to all members of the class is sufficient to justify class certification if that common issue predominates over issues affecting only individual members, in the instant case the numerous issues that affect only individual members predominate over any common issues of law or fact. Questions such as the existence of damages, the proximate cause of damages, and the extent of damages are so individualized and so predominant that they are not appropriate for class action status. In a case such as this, the common questions simply do not predominate over the individual issues the court must address to resolve the claims of each of the individual class members.

In *Avery v. State Farm Mutual Automobile Insurance Co.*, the Illinois Supreme Court held that, in order to satisfy the commonality

requirement of section 2—801, it must be shown that " 'successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members.' " *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 128 (2005), quoting *Goetz v. Village of Hoffman Estates*, 62 Ill. App. 3d 233, 236 (1978). In such a case, all that should remain for nonrepresentative class members is to file proofs of their claim. That is not the case here where, although questions such as the cause of the train derailment and whether the railroad breached its duty of care may be common to all the class members, the questions of proximate cause and the existence and extent of damages certainly are not. That the injuries of a class representative may have been proximately caused by the defendant does not establish that the injuries of any other class member were caused by the defendant, nor does it establish the existence or extent of other class members' damages. Instead, minitrials must be held with respect to each class member to determine these individual issues. Indeed, it is likely that these individual issues will be the object of most of the efforts of the litigants, the court, and the jury.

I recognize that, as the majority points out, class actions have been approved of in mass tort personal injury actions in jurisdictions other than ours. Nevertheless, Illinois appellate courts have never approved of class certification in such a case. I believe that if Illinois is to begin certifying class actions in mass tort personal injury actions, the Illinois Supreme Court should take the lead, not the circuit court of Perry County or this court on appeal. Accordingly, I would have reversed the decision of the circuit court of Perry County certifying this class action.