Docket No. 102060.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MARVIN SMITH *et al.*, All Indiv. and As Representatives of All Persons and Entities Who Are Members of the Class Described Herein, Appellees, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed November 30, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, and Garman concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

Marvin Smith and 10 others (plaintiffs) filed an action in the circuit court of Perry County against the Illinois Central Railroad Company, doing business as the Canadian National/Illinois Central Railroad (Railroad), on behalf of themselves and those persons and businesses who allegedly sustained personal injuries and property damage as a result of a train derailment in Tamaroa, Illinois. The circuit court granted the plaintiffs' motion to certify the case as a class action and the appellate court affirmed. 363 Ill. App. 3d 944. This court granted leave to appeal. 177 Ill. 2d R. 315. For the following reasons, we

reverse the judgments of the appellate and circuit courts, and remand the cause for further proceedings.

## I. BACKGROUND

On February 9, 2003, 21 cars of a north-bound freight train owned and operated by the Railroad derailed in Tamaroa, a small rural community in southern Illinois. Tank cars containing hydrochloric acid, vinyl chloride, methanol, and a methanol/formaldehyde mixture ruptured during the derailment, spilling a portion of their contents onto the ground. Some of the cars containing methanol also caught fire. As a result, more than 1,000 individuals were subjected to a mandatory evacuation. Additional chemical discharges occurred on February 20, 2003, and May 7, 2003. Shortly after the derailment, the railroad initiated a claims process by which it reimbursed numerous individuals and businesses in and around Tamaroa for a variety of alleged losses relating to the spill and evacuation in exchange for written releases agreeing to release the Railroad from liability as to all known claims.

On June 16, 2003, plaintiffs filed a complaint in the circuit court of Perry County containing counts for negligence, negligence based on *res ipsa loquitur*, nuisance, abnormally dangerous activity, and trespass. The complaint alleged that the proposed class plaintiffs "were injured and damaged in one or more of the following ways:

> a. They breathed the harmful chemicals, causing present and potential future damage to their lungs and other bodily organs and tissues;

> b. Their skin was exposed to the harmful chemicals, resulting in present and potential future damage to their skin and other bodily organs and tissues;

> c. The harmful chemicals polluted and contaminated their food and water supplies;

> d. They have experienced physical and mental pain and suffering, fear, anguish, discomfort, and emotional distress, and they will continue to do so in the future, including the fear of future adverse medical consequences and dread diseases;

e. They were required to evacuate their homes and business, resulting in severe inconvenience and, in some cases, expense and/or loss of income;

f. They have incurred medical and related expenses, and will incur such expenses in the future;

g. They have lost wages, earning capacity, and other income, and will experience such losses in the future;

f. [*sic*] They will be required to expend sums to clean the harmful chemical contamination from their real and personal property;

g. [*sic*] To the extent that they are unable to clean the harmful chemical contamination from their real and personal property, the property will be diminished in value as a result of the contamination;

h. [*sic*] The harmful chemicals have caused damage to the plaintiffs' real and personal property;

i. [*sic*] The plaintiffs will be required to undergo medical monitoring to detect future physical harm that may result from contact with the harmful chemicals;

j. [*sic*] The plaintiffs will be required to sample their property to determine whether their property has been contaminated and the extent of that contamination."

The plaintiffs filed a motion to certify the class. The circuit court granted class certification, defining the class as:

"All persons, firms, and legal entities residing, maintaining a place of business, owning property, employed, attending school, or otherwise present in or in the vicinity of Tamaroa, Illinois, or its environs on or after February 9, 2003, February 20, 2003, or May 7, 2003, and who or which have sustained legally cognizable compensatory or punitive damages or may incur or may claim to have incurred legally cognizable compensatory or punitive damages as a proximate result of the Canadian National train derailment which occurred on February 9, 2003, in Tamaroa, Illinois."

The Railroad filed a petition for interlocutory review pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)). The

appellate court denied leave to appeal. The Railroad then filed a petition for leave to appeal to this court. This court denied leave to appeal, but entered a supervisory order directing the appellate court to hear the appeal. *Smith v. Illinois Central R.R. Co.*, 212 Ill. 2d 554 (2004) (supervisory order).

On appeal, the Railroad argued that personal injury actions should not be certified as class actions because such actions would trigger an unworkable array of fact-intensive, claimant-specific questions that would inevitably result in numerous minitrials that defy class treatment. In rejecting this argument, the appellate court noted that while courts historically have been reluctant to employ class certification in mass tort cases because significant questions regarding damages and affirmative defenses would require multiple minitrials, more recent federal and state decisions have found class certification to be appropriate for actions based on a single catastrophic incident such as train derailments, and for mass tort actions alleging exposure to hazardous substances. The court found that such cases demonstrate that the commonality requirement can be met despite the differences in individual claims of injuries and damages. 363 Ill. App. 3d at 951.

The Railroad also argued that the circuit court abused its discretion in finding that the plaintiffs satisfied the commonality requirement for class certification in the present case. The appellate court disagreed, finding that the liability issues, which the court found could be determined on a classwide basis because the claims arose from a single catastrophic event with a common nucleus of operative facts, were predominate. The court reasoned that the only issues distinguishing the class members were the extent of each member's exposure to harmful contaminants and the resulting personal injuries and property damage sustained, and that if differences in the amount of individual damages would make a class action improper, a class action would never be possible because variations in the amount of damages among class members is almost inevitable. 363 Ill. App. 3d at 953.

The Railroad also argued that the class definition was "unworkably overbroad" because the terms "vicinity" and "environs" were not defined by geographic borders and that limiting membership to those who have sustained legally cognizable claims made membership contingent on whether a given person's claim was

meritorious, and not objectively ascertainable without individualized fact-finding. Noting that the circuit court did not have the opportunity to address these arguments and that a preliminary review of the record demonstrated that these deficiencies could be corrected, the appellate court remanded the cause to the trial court to consider the Railroad's objections to the class definition and to make appropriate modifications. 363 Ill. App. 3d at 956.

Justice Welch dissented, arguing that questions such as the existence of damages, the proximate cause of damages, and the extent of damages are so individualized and so predominate over any common issues of law or fact that class certification was not appropriate. 363 Ill. App. 3d at 956.

We granted the Railroad's petition for leave to appeal.


II. ANALYSIS

On appeal, the Railroad argues that the circuit court abused its discretion in granting plaintiffs' motion for class certification. Specifically, the Railroad argues that (1) the common issues of law and fact do not predominate over the individualized injury and causation issues; (2) the class definition will require individualized claim reviews to determine class membership; (3) numerous expert and governmental reports demonstrate the lack of connection between the derailment site and the amorphous geographic area incorporated by the class definition; and (4) the proposed class is insufficiently numerous.

Section 2–801 of the Code of Civil Procedure (735 ILCS 5/2–801 (West 1998)) provides that an action may proceed as a class action only if the circuit court finds: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of fact or law common to the class, and those common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. Decisions regarding class certification are within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion or applied impermissible legal criteria. *Avery v. State Farm Mutual Automobile*

*Insurance Co.*, 216 Ill. 2d 100 (2005). However, " '[a] trial court's discretion in deciding whether to certify a class action is not unlimited and is bounded by and must be exercised within the framework of the civil procedure rule governing class actions.' " *Avery*, 216 Ill. 2d at 126, quoting 4 A. Conte & H. Newberg, Newberg on Class Actions §13:62, at 475 (4th ed. 2002).

The Railroad begins by noting, as did the appellate dissent, that no Illinois appellate court decision has ever approved class certification in a mass-tort personal injury case. Indeed, there is little Illinois authority dealing with class certification in personal injury cases. However, as we recently observed in *Avery*, our section 2–801 is patterned after Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23), and federal decision interpreting Rule 23 are persuasive authority with regard to the question of class certification in Illinois. *Avery*, 216 Ill. 2d at 125.

Rule 23(a) sets forth four prerequisites for maintaining a class action: (1) the class is so numerous that joinder of all members is impossible; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If these requirements are satisfied, the court must then find that the class action fits into one of the three categories of class actions set forth in Rule 23(b). *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178 (3d Cir. 2001). Rules 23(b)(1) and (b)(2) are not relevant to our discussion. Rule 23(b)(3) allows a plaintiff to maintain an action as a class action if he can demonstrate that: (1) the questions of law or fact common to the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation, and it is a far more demanding requirement than the commonality requirement of Rule 23(a)(2). *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003), citing *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 623-24, 138 L. Ed. 2d 689,

713, 117 S. Ct. 2231, 2250 (1997). The test for predominance is not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 434 (Tex. 2000); citing *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602 (Tex 1998).[1] Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003). Such an inquiry requires the court to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). Satisfaction of section 2–108's predominance requirement necessitates a showing that " 'successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members.' " *Avery*, 216 Ill. 2d at 128, quoting *Goetz v. Village of Hoffman Estates*, 62 Ill. App. 3d 233, 236 (1978). Where the predominance test is met, " 'a judgement in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.' " *Southwestern*, 22 S.W.3d at 434, quoting *Life Insurance Co. of the Southwest v. Brister*, 722 S.W.2d 764, 772 (Tex Ct. App. 1986).

Historically, certification of mass tort personal injury cases has been disfavored. *Castano*, 84 F.3d at 746. In fact, the advisory committee notes to Rule 23(b)(3) state that "[a] 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances, an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." Fed. R. Civ. P. 23 advisory committee's note, subdivision (b)(3), 39 F.R.D.

---

[1]Rule 42 of the Texas Rules of Civil Procedure, which govern class actions, is virtually identical to Federal Rule 23.

69, 103 (1966). Although Rule 23 does not categorically exclude mass tort cases from class certification, the committee's note clearly indicates that certification in such cases should be the exception rather than the rule.

In *Southwestern*, the Texas supreme court provided an excellent explanation of the unsuitability of the class action device for mass tort personal injury cases such as the one before us, observing that "[p]ersonal injury claims will often present thorny causation and damage issues with highly individualistic variables that a court or jury must individually resolve. [Citation.] Thus, the class action will rarely be an appropriate device for resolving them." *Southwestern*, 22 S.W.3d at 436. As noted above, Rule 42 of the Texas Rules of Civil Procedure, which govern class action certification, is virtually identical to Federal Rule 23, after which our own class action statute is patterned. Consequently, we find the court's rationale in *Southwestern* persuasive.

In *Southwestern*, a tank at the defendant's refinery exploded and burned, sending a plume of smoke into the air which deposited a layer of ash and soot on homes in the surrounding neighborhoods. Plaintiffs filed an action claiming personal injuries and property damage from the exposure, as well as mental anguish caused by the sight and sound of the explosion. The trial court granted the plaintiffs' motion for class certification and the appellate court affirmed. The supreme court of Texas reversed, finding that the common issues did not predominate and that a class action was not superior to other available methods for a fair and efficient adjudication of the controversy. *Southwestern*, 22 S.W.3d at 436-39.

With respect to predominance, the court found that the causation and damage issues were unique to each class member. The court acknowledged that the issue of whether Southwestern was liable for the explosion and whether materials released were capable of causing harm were common, but found that the answers to these questions would not establish whether and to what extent each class member was exposed, whether the exposure was the proximate cause of harm to each class member, whether and to what extent other factors contributed to the alleged harm, and the amount of each class members damage. As to those issues, highly individual variables, including each class members dosage, location, activity, age, medical

history, and credibility would all be essential to establishing causation and damages. *Southwestern*, 22 S.W.3d at 436-37.

The court also found that class treatment was not superior to other available methods for the fair and efficient adjudication of the controversy:

> "The class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment. It is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites to recovery under a given tort. Procedural devices may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.' [Citations.] Although a goal of our system is to resolve lawsuits with 'great expedition and dispatch and at the least expense,' the supreme objective of the courts is 'to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law.'[Citation.] This means that 'convenience and economy must yield to a paramount concern for a fair and impartial trial.' [Citation.] And basic to the right to a fair trial–indeed, basic to the very essence of the adversarial process–is that each party have the opportunity to adequately and vigorously present any material claims and defenses. If Southwestern chooses to challenge the credibility of and its responsibility for each personal injury claim individually, then what may nominally be a class action initially would degenerate in practice into multiple lawsuits separately tried. ***.
>
> ***
>
> Aggregating claims can dramatically alter substantive tort jurisprudence. Under the traditional tort model, recovery is conditioned on defendant responsibility. The plaintiff must prove, and the defendant must be given the opportunity to contest, every element of a claim. By removing individual considerations from the adversarial process, the tort system is shorn of a valuable method for screening out marginal and unfounded claims." *Southwestern*, 22 S.W.3d at 437-38.

The unsuitability of the class action device for mass tort personal injury cases was also explained in *Steering Committee v. Exxon Mobil Corp.*, No. 05–30781 (5th Cir. August 18, 2006), wherein the court held that "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class." *Steering Committee*, slip op. at 3, citing *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 308 (5th Cir. 2003); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 745 (5th Cir. 2003); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998).

In *Steering Committee*, a valve in Exxon Mobil's Baton Rouge Chemical Plant failed, resulting in an oil leak. The oil ignited and burned for several days, and the wind carried a smoke plume over portions of Baton Rouge. Plaintiffs filed suit seeking damages for personal injuries, discomfort and annoyance, emotional distress resulting from knowledge of exposure to hazardous substances, fear of future unauthorized exposures, and economic harm including damage to business and property. The district court denied plaintiffs' motion for class certification, finding that they failed to meet the predominance requirement of Rule 23(b)(3). The court found that the personal injury claims would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals. The court further noted that in addition to the personal injury claims, separate types of proof would be necessary for the property damage, devaluation, and business loss claims. The court concluded that because each plaintiff's claim was highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries, one set of operative facts would not establish liability, and individual issues surrounding exposure, dose, health effects, and damages would dominate at trial. *Steering Committee*, slip op. at 3.

The Fifth Circuit affirmed, holding that because individual plaintiffs suffered different alleged symptoms as a result of different alleged periods and magnitudes of exposure, and because some plaintiffs alleged both personal and property injuries, while others alleged only one or the other, the damage claims were not subject to

-10-

any sort of formulaic calculation, and plaintiffs could therefore not meet the predominance requirement. *Steering Committee*, slip op. 3.

Plaintiffs point out that the court in *Steering Committee* affirmed the district court's denial of class certification, holding that the district court did not abuse its discretion in doing so. While this is true, we believe the court's rationale supports our determination that the class action device is unsuitable for mass tort personal injury cases such as the one before us.

We agree with the reasoning and conclusions in *Southwestern* and *Steering Committee*. The lower courts in this case erroneously equated liability for the derailment with liability for the alleged health consequences arising from exposure to the chemicals. However, the vast majority of the damages flow not from the derailment itself, but from the exposure to the chemicals spilled. Proof of proximate causation in this case will involve highly individualized variables, including whether and to what extent, and to which chemicals each member was exposed, location at the time of exposure, age, activity, medical history, and credibility. Plaintiffs seek a variety of types of damages, including loss of money or personal property resulting from the evacuation, current and future illness as a result of the chemical exposure, emotional injury, contamination of real and personal property, and diminution in value of real property. Not only will each individual plaintiff be required to prove the amount of damages, he or she will also have to prove which types of damages were incurred. Clearly, individual issues of proximate causation and damages will consume the great bulk of the time at trial. Consequently, the common issues do not predominate.

One of the cases plaintiffs rely upon, *Sala v. National R.R. Passenger Corp.* 120 F.R.D. 494 (E.D. Pa. 1988), was also cited by the plaintiffs in *Steering Committee*. In *Sala*, the named plaintiff suffered personal injuries when the Amtrak train on which he was a passenger collided with an Amtrak maintenance vehicle and derailed. The district court granted the plaintiff's motion for class certification. The court first determined that the issue of liability was common to the entire class because each class member would claim to have been injured at the same time and location, and as a result of the same conduct, and therefore would offer precisely the same proof to establish Amtrak's liability. The court next determined that the central

issue involved in establishing causation was likewise common to all class members because the injuries were allegedly sustained from a single cause: the collision and derailment of the train. Finally, the court noted that while the injures and damages would have to be determined on an individual basis, the common issues of liability and defenses as well as causation predominated over the individual issues of injuries and damages. *Sala*, 120 F.R.D. at 499.

The court in *Steering Committee* distinguished *Sala* on the basis that the *Sala* involved injuries sustained from a single cause: the collision and derailment of the train on which they were riding. The court noted that while the alleged cause of injuries was also a single accident–a refinery fire–the causal mechanism for the plaintiffs' injuries–alleged exposure and fear of exposure to toxic substances–was not so straight forward. *Steering Committee*, slip op. at 4.

The plaintiffs also rely upon *Sterling v. Velsicol Chemicals*, 855 F.2d 1188 (6th Cir. 1988). In *Sterling*, residents living near Velsicol's chemical-waste burial site brought a class action for personal injuries and property damage resulting from hazardous chemicals leaking from the landfill and contaminating the groundwater. The court in *Sterling* affirmed the district court's certification of the class, noting that almost identical evidence would be required to establish the level and duration of chemical contamination, the causal connection, if any, between the plaintiffs' consumption of contaminated water and the type of injuries allegedly suffered, and the defendant's liability.

The court in *Steering Committee* distinguished *Sterling*, finding that *Sterling* stood only for the proposition that it is theoretically possible to satisfy the predominance and superiority requirements of Rule 23(b) in a mass tort or mass accident case. *Steering Committee*, slip op. at 4.

Many of the other cases relied upon by the plaintiffs are inapposite. *Miner v. Gillette Co.*, 87 Ill. 2d 7 (1981), and *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977), stand only for the proposition that if the common issues predominate, the existence of individual issues will not defeat class certification. *Lee v. Allstate Life Insurance Co.*, 361 Ill. App. 3d 970 (2005), *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992 (2004), *Clark v. Tap Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538 (2003),

*Haywood v. Superior Bank FSB*, 244 Ill. App. 3d 326 (1993), *Slimack v. Country Life Insurance Co.*, 227 Ill. App. 3d 287 (1992), *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069 (1988), and *Carrao v. Health Care Services Corp.*, 118 Ill. App. 3d 417 (1983), were all breach-of-contract/consumer-fraud cases where the plaintiffs suffered the same type of harm from essentially identical transactions. *Hickey v. City of Seattle*, 236 F.R.D. 659 (W.D. Wash. 2006), involved a class action wherein plaintiffs sought damages stemming from a mass arrest of protestors at the 1999 ministerial meeting of the World Trade Organization. In *Watters v. Department of Social Services*, 929 So. 2d 267 (La. App. 2006), plaintiffs filed a class action seeking damages for injuries resulting from their exposure to asbestos, mold, and other toxins present in the building where they worked. In finding the commonality requirement of Louisiana's class actions statute met, the court provided no analysis or reasoning for its finding that the common issues predominated. In *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006), plaintiffs filed a class action seeking damages resulting from an oil leak which occurred in the aftermath of hurricane Katrina. In granting class certification, the court found that because the vast majority of the plaintiffs were out of the area when the spill occurred, damages for personal injury would form only a slight portion of the plaintiffs' damage claims. In *Doyle v. Fluor Corp.*, No. ED 87137 (2006), class plaintiffs did not seek damages for personal injury, only damage to their real property. In *In re Miamisburg Train Derailment Litigation*, 132 Ohio App. 3d 571, 725 N.E.2d 738 (1999), and *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992), the propriety of class certification was not at issue.

Plaintiffs cite several cases involving chemical spills resulting from tank car derailments, but we find these cases unpersuasive. In *Livingston Police Parish Jury v. Illinois Central Gulf R.R. Co.*, 432 So. 2d 1027 (La. App. 1983), and *Louisville & Nashville R.R. Co. v. Wollenmann*, 180 Ind. App. 588, 392 N.E.2d 1000 (1979), the plaintiffs alleged personal injuries and property damages arising from tank car derailments and chemical spills. In affirming class action certification, the courts in both cases found that the common issues predominated, but provided no analysis or reasoning for their findings.

Given the absence of any meaningful analysis of the predominance issue, we find these cases unpersuasive.

In *Reynolds v. CSX Transportation, Inc.*, 55 Ohio App. 3d 19, 561 N.E.2d 1047 (1989), the court affirmed the trial court's decision to grant class certification instituted on behalf of persons evacuated from their homes and businesses after a tank car containing phosphorous derailed and its contents caught fire, sending a thick cloud of smoke through several residential neighborhoods and commercial districts. Finding that the questions concerning CSX's conduct up to the time of the derailment were common to all members of the class, the trial court certified the class as to the issues of negligence and malice (punitive damages), but found that certain issues such as proximate cause and compensatory damages, were too individualized to be handled as part of the class action. The appellate court affirmed. *Reynolds* is clearly inapposite because the trial court in this case did not limit class certification to the issue of liability for the derailment. Indeed, *Reynolds* supports a conclusion that class certification is not proper in this case.

## CONCLUSION

Based on the forgoing analysis, we conclude that the common issues of fact and law do not predominate. Although proof of the cause of the derailment will be relatively straightforward, this alone will not establish the Railroad's liability. Proof of proximate causation and damages will be highly individualized and will consume the bulk of the time at trial. Because the statutory requirement of predominance cannot be met in this case, we hold that the circuit court abused its discretion in certifying the class. As a consequence of this holding, we need not address the Railroad's other arguments. The judgments of the appellate court and circuit court are hereby reversed, and the cause remanded for further proceedings.

*Judgments reversed;*
*cause remanded.*

JUSTICE BURKE took no part in the consideration or decision of this case.