2025 IL App (1st) 242423-U

FIRST DISTRICT,
SIXTH DIVISION
September 19, 2025

No. 1-24-2423

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ALEKSANDRA ZIEBA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 2020 CH 06466 |
| HEALTH CARE SERVICE CORPORATION d/b/a | ) | |
| BLUE CROSS BLUE SHIELD OF ILLINOIS, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Class certification was improper where the trial court acknowledged plaintiff did not demonstrate that common questions would predominate over individual ones, since calculation of damages and other issues would involve highly individualized inquiries for each class member.

¶ 2    This interlocutory appeal stems from a class certification order that skims over the requirements of class certification to fit a case that does not qualify for class certification because plaintiff has not met her burden of proof.

¶ 4        Plaintiff Aleksandra Zieba had a health insurance policy with defendant Health Care Service Corporation (also known as Blue Cross and Blue Shield of Illinois, "Blue Cross") and used an out-of-network provider to treat her Lyme disease. She submitted claims to Blue Cross totaling $82,888.53, of which Blue Cross paid none. Zieba then filed a breach of contract suit against Blue Cross, alleging it breached the terms of her policy requiring it to adjudicate her claims within 45 days and provide dates of service in its explanation of benefits statements (EOBs).

¶ 5        Upon Zieba's fourth motion for class certification, the trial court certified two classes "for liability purposes only": (1) Illinois policyholders whose claims Blue Cross adjudicated beyond the contractual 45-day deadline, and (2) Illinois policyholders who received EOBs without line-item dates of service. Blue Cross appeals pursuant to Supreme Court Rule 306(a)(8) (eff. Oct 1, 2020), arguing that certification was improper where, among other things, common issues do not predominate. We agree and reverse the grant of class certification.

¶ 6                                    I. BACKGROUND

¶ 7        According to the third amended complaint ("complaint"), Zieba contracted Lyme disease from a tick bite in 2000. After 18 years of pain and "a plethora of contradictory diagnoses" from various doctors, she was diagnosed with Lyme disease in 2018.

¶ 8                         A. Zieba's Blue Cross Insurance Policy

¶ 9        Starting on January 1, 2018, and at all relevant times thereafter, Zieba was insured under a Blue Cross insurance plan. Zieba's policy provides that when the insured submits a complete post-service claim, "Blue Cross and Blue Shield must notify you of the claim determination (whether adverse or not)" within 30 days. This deadline may be extended for "up to 15 days" if Blue Cross "(1) determines that such an extension is necessary due to matters beyond the control

of the Plan and (2) notifies you in writing, prior to the expiration of the initial 30-day period, of the circumstances requiring the extension of time and the date by which Blue Cross and Blue Shield expects to render a decision." If the initial claim is incomplete, Blue Cross has 30 days to notify the insured of that fact, whereupon the insured has 45 days to provide complete claim information to Blue Cross. After Blue Cross receives the complete information, it has 45 days to notify the insured of its claim determination.

¶ 10        Zieba's policy additionally provides that if a claim is denied or not paid in full, Blue Cross will notify the insured in writing of (1) the reasons for denial, (2) "[a] reference to the benefit plan provisions on which the denial is based, or the contractual, administrative or protocol for the determination," and (3) subject to privacy laws and other restrictions, "the identification of the Claim, date of service, health care provider, Claim amount (if applicable), and a statement describing denial codes with their meanings and the standards used."

¶ 11                                    B. Zieba's Treatment and Claims

¶ 12        For treatment of her Lyme disease, Zieba underwent a 19-week course of treatment from March 12 to July 16, 2018, at the Sponaugle Wellness Institute in Florida ("Sponaugle"), an out-of-network provider. Sponaugle does not accept insurance and charges its patients the full cost of all services in advance. Additionally, it does not prepare claim forms or submit bills to insurance providers on behalf of its patients. Zieba understood this and knew she would have to submit to Blue Cross her own paper claim forms and invoices to support a request for reimbursement.

¶ 13        After completion of her 19-week treatment, Zieba submitted two claims to Blue Cross. Her first claim for "infusion therapy," submitted on August 8, 2018, totaled $15,702.53 and included 108 pages of attached receipts. The claim covered supplies and services from February through July 2018, consisting chiefly of medical tests ordered by Sponaugle and medications and

supplements prescribed by Sponaugle. Zieba's second claim for "infusion therapy," submitted on October 22, 2018, included 58 additional pages of receipts. The claim totaled $67,186.00, consisting of $66,000 in Sponaugle medical treatments and $1,186.00 for a PICC line removal and medical tests. It covered services and supplies from March through August 2018, which overlaps with the period covered by her first claim.

¶ 14 Months passed with no response from Blue Cross. In January 2019, Zieba's husband contacted Blue Cross to inquire about the status of the claims. "Around the same time," Blue Cross sent its first EOB to Zieba. In total, Blue Cross sent three EOBs, with processing dates of December 26, 2018, January 7, 2019, and July 10, 2019. None of the EOBs correspond exactly to either of Zieba's two claims, but reference overlapping treatment dates. Moreover, the line-item charges on the EOBs contain labels such as "Medical Visits," "Med/Surg Supplies," and "Treatment Other," and none of the line items include corresponding dates of treatment or procedure codes. Zieba alleges this makes it impossible to determine which procedures are being referenced in each EOB. Blue Cross determined that of $64,280 in claims, a total of $9,874.67 was covered, which was less than Zieba's deductible of $15,000 for out-of-network providers.

¶ 15 According to Zieba's complaint, Zieba's symptoms were alleviated by her treatment at Sponaugle, but began to return. Zieba was left "in limbo" because she could not afford further treatment on her own and had "no clear guidance on what future treatment Blue Cross might reimburse and in what amount." Thus, Zieba was "depriv[ed] *** of the ability to make timely and informed decisions about [her] medical treatment." If she had received timely and clear adjudications, she could have made different decisions regarding her treatment, including borrowing money to cover additional treatment while knowing some portion of that money

would be reimbursed, or seeking treatment with a provider who would be covered. Instead, she discontinued treatment and her condition worsened.

¶ 16                                    C. Procedural History

¶ 17        Zieba filed the instant suit against Blue Cross on October 26, 2020. The court dismissed her complaint without prejudice. After multiple attempts to replead, Zieba filed the operative third amended complaint on August 17, 2022. Zieba seeks relief in seven counts.

¶ 18        Counts I, II, and III pertain to Blue Cross's untimely determination of her claims, which she alleges is a breach of contract (count I), breach of the implied duty of good faith and fair dealing (count II), and "vexatious and unreasonable" delay under section 155 of the Insurance Code (215 ILCS 5/155 (West 2020)) (count III). Counts IV and V pertain to Blue Cross's denial of coverage for certain allegedly covered services, which Zieba claims is a breach of contract (count IV) and "vexatious and unreasonable" conduct under section 155 (count V). Counts VI and VII pertain to Blue Cross's failure to provide line-item dates of service on its EOBs, which Zieba alleges is a breach of contract (count VI) and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2020)) (count VII). Counts II and VII were dismissed with prejudice, leaving only Zieba's breach of contract and section 155 claims remaining. As pleaded, Zieba seeks compensatory damages for having purchased an alleged "illusory" policy and damages related to additional costs, frustration, aggravation, inconvenience, and her worsening health condition caused by Blue Cross's delay.

¶ 19        On January 24, 2022, Zieba filed her first motion for class certification. She filed a subsequent motion on August 17, 2022, and an amended motion on April 21, 2023.

¶ 20        On March 14, 2024, the court denied Zieba's amended motion for class certification. During oral argument, the court questioned whether the putative class members incurred

damages: "What if they get [an adjudication] on the 46th day? What was their damage?" Zieba argued they "incurred damage to the value of the contract" because they bargained for a 45-day deadline which was not met. She "envision[ed]" an expert would "need *** to do an analysis" to quantify the loss. She further stated that if the class was certified, she would not proceed on her individual damages but would only pursue damages under a loss-of-contract-value theory. The court continued to express skepticism:

> "There may be people in this class who—they're happy, it was a day late, it was two days late, or maybe *** they forgot to sign something and that's their bad, not really was Blue Cross. Or one of the documents they provided timely was blurry, they didn't realize it, and 45 days lapsed. And once it was found out, they submitted, and Blue Cross paid."

The trial court denied Zieba's motion without prejudice to allow her to articulate a more precise definition of her proposed classes.

¶ 21        On June 17, 2024, Zieba filed a fourth motion for class certification, seeking certification of two proposed classes: one class of individuals who did not receive coverage determinations within 45 days of Blue Cross's receipt of their complete claims, and one class of individuals who submitted claims for multiple days of treatment and received EOBs lacking line-item dates of service. Regarding damages, Zieba claimed "class members' policies are worth less than what they paid for them because they did not receive all of the services Blue Cross promised it would provide." Zieba did not name or retain an expert, nor could she articulate a class-wide damages model. Nonetheless, Zieba argued "[t]he difference between the promised and received policies can be determined using a conjoint analysis conducted by an expert *** which Blue Cross' experts will be free to challenge at that time."

¶ 22        On November 7, 2024, following full briefing and argument, the trial court granted Zieba's motion in part, certifying two classes "for liability purposes only." Class I consists of all persons with Illinois addresses covered under Blue Cross individual health plans "who submitted a complete claim for benefits but for whom Blue Cross did not issue any determination within 45 days of Blue Cross's receipt of the claim" in the three years before the filing of the complaint. Class II consists of all persons with Illinois addresses covered under Blue Cross individual health plans who made a claim for multiple days of treatment which was denied in whole or in part "to whom Blue Cross sent [EOB] Statements that omitted dates of service aligned with line-item treatment/services listed on the EOB" in the three years before the filing of the complaint.

¶ 23        In certifying these classes, the court found Zieba had demonstrated the four prerequisites for a class action: numerosity, commonality and predominance, adequacy, and appropriateness. Regarding numerosity, the court found Zieba presented evidence that between October 26, 2017, and October 26, 2020, Blue Cross failed to issue a claim determination within 45 days of receipt for 4,956 claims. She also showed that from October 1, 2017, through July 31, 2019, Blue Cross issued 3,800 EOBs covering multiple dates of service that omitted line-item dates of service.

¶ 24        Regarding commonality and predominance, the court stated, "it is not clear whether common questions regarding liability will predominate over any individual questions regarding each individual class member." The court additionally found there were "questions surrounding the issue of damages," but found those questions were "not *** an impediment to class certification." The court cited *Bueker v. Madison County*, 2016 IL App (5th) 150282, ¶¶ 35-36, for the proposition that a class could be certified as to liability only.

¶ 25        Regarding adequacy, the court found Zieba an adequate class representative because her claims were identical to those of both classes. Based on the foregoing factors, the court found it appropriate to have the action proceed as a class action.

¶ 26        On December 9, 2024, Blue Cross filed a petition for leave to appeal the class certification order. On December 14, 2024, while Blue Cross's petition was pending, Zieba filed a motion in the trial court to clarify the class certification order *nunc pro tunc*. Zieba stated that the court's order "includes one scrivener's error, in which the Court inadvertently stated that it is not clear whether common questions predominate over individualized issues." According to Zieba, this did not conform to the court's judgment.

¶ 27        The trial court denied Zieba's motion on December 19, 2024. The court explained: "I believe the plaintiffs have met all of their statutory factors for certification of a class. However, there is a question at least as of now as of whether or not the individual liability issues might predominate. I have made a specific finding that they indeed will, but following [*Bueker*] I believe you're at least sufficient for a liability class."

¶ 28        Despite finding individual liability issues might predominate and "indeed will," the court did not decertify the two classes. Instead, it "let it all play out" here, stating that, "whatever [the appellate court] decide[s] to do is going to really help us on this case ***." The court reiterated the "bottom line," by saying "it can't tell right now whether or not liability -- individual liability or damages issues is going to predominate, and therefore, it's going to only certify a liability class."

¶ 29                                II. ANALYSIS

¶ 30        Zieba's effort to obtain class certification has forced a square peg into a round hole by ignoring her burden of proof and evading the predominance requirement of class certification

under section 2-801 of the Code of Civil Procedure. 735 ILCS 5/2-801 (West 2022). Section 2-801 provides four prerequisites for class certification: (1) the class is so numerous that joinder is impractical; (2) common questions of fact or law predominate over questions affecting individual class members; (3) the representative party will fairly and adequately protect class interests; and (4) a class action is "an appropriate method for the fair and efficient adjudication of the controversy." *Id.*; see also *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006). The party seeking certification bears the burden of establishing the four prerequisites, and the court must find all prerequisites present before it can certify a class. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 167 (2005).

¶ 31    In deciding whether to certify a class, the court may consider any matters of fact or law properly presented by the record, including pleadings, depositions, affidavits, and answers to interrogatories. *Lee v. Buth-Na-Bodhaige, Inc.*, 2019 IL App (5th) 180033, ¶ 53. Certification is within the trial court's discretion and will not be disturbed absent an abuse of discretion or an application of impermissible legal criteria. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007). Since section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure, federal decisions interpreting Rule 23 are persuasive authority on class certification issues in Illinois. *Avery v. State Farm Mutual Automobile Insurance Co.,* 216 Ill. 2d 100, 125 (2005).

¶ 32    Blue Cross argues that certification was improper because (1) common questions of fact and law do not predominate; (2) Zieba has not met her burden of showing numerosity; and (3) a class action is not an appropriate method for resolving Zieba's claims. We agree with the first point and need not consider the other two contentions.

¶ 33        Although the trial court said Zieba met the requirements of class certification, its written and oral findings do not support this conclusion. The court admitted it was not sure whether the common questions would predominate over individual ones. When asked to clarify, the court reiterated that "there is a question at least as of now as of whether or not the individual liability issues might predominate. I have made a specific finding that they indeed will." Since "they indeed will," class certification is improper because the predominance requirement is not met.

¶ 34        The court doubled down on its statement in its written order that "it is not clear whether common questions regarding liability would predominate over any individual questions regarding each individual class member," stating, "I haven't ruled one way or the other. I said it's not clear."

¶ 35        We agree it is not clear, mainly because Zieba did not meet her burden of proving predominance. She completely ignored the need to present a class-wide damages model and gave short shrift to the kind of rigorous analysis that courts must perform at the class certification stage.

¶ 36        The predominance requirement is not perfunctory. Its purpose is "to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation." *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 448 (2006). The test is "whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Id.* at 448-49. The court must "identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class." *Id.* at 449. This requires scrutiny of the relation between common and individual questions in the case.

¶ 37        An individual question is one where "members of a proposed class will need to present evidence that varies from member to member." (Internal quotation marks omitted.) 2 W.

Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012). A common question is one where "the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." (Internal quotation marks omitted.) *Id.* When one or more of the central issues in the action are common to the class and predominate, the action may be certified as a class even though damages may need to be individually calculated. *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 832 (2007). However, "when an individual question does exist which is more time consuming and more difficult to prove than the common question which is readily proved, that situation tends to negate the predominant status of the common question." *Rodmaker v. Johns Holding Co.*, 205 Ill. App. 3d 520, 526 (1990) (element of predominance was not met where the main focus would be on calculating compensatory damages for each individual plaintiff). Such is the case here.

¶ 38        To prove predominance, Zieba must show that successful adjudication of her purported claims would establish a right of recovery in other class members. *Smith*, 223 Ill. 2d at 449. That is, a judgment in her favor "should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim." *Id.* (Citations omitted.) Clearly, this is not all that would remain. Rather, a multitude of individual inquiries would have to be performed, ranging from damages, to an assessment of when each individualized claim was completed, to whether the prompt payment interest penalty was paid and if any amount is owed, to whether Blue Cross improperly denied individual claims, and whether there was any actual or perceived confusion as to which services were covered based on each individual's own specific circumstances of treatment. Zieba showed none of this, thus failing to meet her burden for class certification.

¶ 39     Most glaring is Zieba's complete failure to show a class-wide damages model or even attempt to explain one with any veracity. At the hearing, Zieba's counsel conceded that they had not yet decided what damages they would seek. Counsel shifted away from Zieba's individualized damages pleaded in the complaint and pivoted to a speculative flat-amount damages model, referring generally to a hypothetical class-wide formula that does not yet exist.

¶ 40     When asked if damages would be determined on an individual basis or if every class member would have the same damage, counsel said, "[w]e have not determined that yet *** but those are two options. It could be on an individual basis, it could be a formula." Apparently, it would depend on what their prospective, unnamed, and undecided expert determined is the "best way to address the grievances."

¶ 41     When pushed to describe a damages model in more detail, Zieba's counsel responded, "we don't have the defined formula at this time. So I couldn't tell you the particulars of how that formula is going to be calculated for policyholders. We haven't developed that formula yet and it's not in stone that that is how we will pursue damages." They also had not determined if the diminution of value is the whole value of the policy or just a percentage, admitting, "we don't have a set [or sample of damages] at this time" – four years into the litigation.

¶ 42     This is not how class certification works. It is a demanding process in which the named plaintiff must prove all the elements of class certification and present a damages model that measures damages attributable to the theory of liability and is capable of class-wide application. Absent such a model, certification is improper. See *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

¶ 43     In *Comcast*, the United States Supreme Court held that a class should not be certified where the named plaintiffs failed to provide a damages model on a class-wide basis. *Id.* at 33-36.

The Court held that where damages are not shown to be measurable on a class-wide basis, questions of individual damages would inevitably overwhelm questions common to the class, reducing the predominance requirement to a nullity. *Id.* This is consistent with our opinion in *Mele v. Howmedica, Inc.*, 348 Ill. App. 3d 1, 23 (2004), where we explained that, even in class actions with respect to particular issues, a class plaintiff must show the common questions predominate over the individual issues so as not to trivialize the predominance requirement of section 2-801.

¶ 44    *Bueker,* upon which the trial court relied, does not run afoul of this precedent, but the trial court misapplied it. In granting class certification for liability purposes only, the court accepted Zieba's argument that under *Bueker,* she need only show common issues predominate as to liability, not damages or proximate cause. In her view, liability is shown merely by counting the number of days or looking at the line-items of the EOB that do not have corresponding dates. Not so. This is just the starting point, but alone it will not establish Blue Cross's liability.

¶ 45    In connection with claims for breach of contract, proof of damages resulting from a breach will be highly individualized. Zieba seeks damages resulting from the denial of coverage for treatments that should have been covered, but every plaintiff will have different coverage depending on their individual claims. Also, not every delay in a determination of benefits results in damage, and not every EOB without a line-item date of service is incomprehensible. It depends on the individualized services rendered to each plaintiff and their own particular knowledge of their claims. Further, without an identified class-wide damages model, damages will consume the bulk of trial time, particularly where Zieba's complaint seeks compensatory damages related to her own personal frustration, aggravation, inconvenience, and worsening health condition, as well as damages for purchasing a purported "illusory" policy that deprived

her of obtaining different insurance coverage and damages for the denial of coverage for eligible claims.

¶ 46       Turning to Zieba's section 155 claims, these claims are even more fact intensive and tailored to each circumstance and individual plaintiff.

¶ 47       Under section 155 of the Illinois Insurance Code, an insured may recover damages if the insurer disputes the amount of the loss payable on a claim, delays settling a claim, or refuses to provide coverage and the insurer's action or delay was unreasonable and vexatious. 215 ILCS 5/155 (West 2022). This two-prong test is highly individualized and depends on the totality of the circumstances of each claim, including whether a bona fide coverage dispute exists, whether the insured was forced to sue to recover, and the insurer's communication and attitude toward each individual insured. Zieba presented nothing to show common questions of fact or law would predominate in assessing class claims under section 155 or that Blue Cross's attitude and lack of communication toward her was the same as with every other class member.

¶ 48       As the trial court noted early on when it denied class certification, individual questions will predominate and are not susceptible to generalized, class-wide proof. The causes of action are highly fact-specific and depend on the circumstances of each case, each insurance claim, and the impact on each individual plaintiff. Although Zieba "envision[ed] an expert" could do a damages analysis, she presented no expert or plausible class-wide damages model to demonstrate predominance. The court cannot meaningfully assess the predominance requirement based on a hypothetical damages model yet to be presented by an unnamed expert. See *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996) ("a court cannot rely on assurances of counsel that any problems with predominance *** can be overcome").

¶ 49    Because Zieba failed to meet her burden of establishing predominance, we reverse the order of class certification. See *Smith*, 223 Ill. 2d at 454 (supreme court reversed class certification in mass tort personal injury class action where the individualized issues of proximate cause and damages would be unduly time-consuming and involve highly individualized variables); *Kitzes v. Home Depot, U.S.A., Inc.*, 374 Ill. App. 3d 1053, 1060 (2007) (plaintiffs failed to satisfy predominance requirement where putative class members' damages would vary widely and, when examined closely, "the common links between [plaintiffs' claims] dissipate into many distinctive categories"); *In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018) (court reversed class certification in antitrust suit against drug manufacturers where a sizable portion of class members were not injured); *Schroeder v. Progressive Paloverde Insurance Co.*, 146 F.4th 567, 577 (7th Cir. 2025) (court reversed class certification against insurance company for breach of contract, finding common issues did not predominate because to determine if plaintiffs were damaged, "the jury would need to consider individualized evidence about each putative class member's car and each comparable car included in her car's valuation report" and, as a result, "[i]ndividual issues would *** overwhelm the litigation").

¶ 50    We recognize, in some instances, the element of predominance may be met even where plaintiff has not proffered an expert or where class members have varying levels of recovery. For instance, in *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 550 (2003), cited by Zieba, we found individual issues of injury and damages did not defeat class certification because whether a class member was injured would be "relatively easy to resolve" and individual damages could be calculated based on a few known data points. Likewise, in *Bayeg v. Admiral at the Lake*, 2024 IL App (1st) 231141, ¶¶ 39-40, also cited by Zieba, we affirmed certification of a

class of employees in a BIPA action, finding the calculation of damages would be "straightforward and formulaic" since the BIPA statute provides for liquidated damages.

¶ 51 These cases are distinguishable, for Zieba has not presented any known "data points" or straightforward and formulaic damages model to date. It is apparent that separate evidentiary hearings will be required for each class member's claims for breach of contract and bad faith under section 155, which threaten to overwhelm the litigation. "[W]hen a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment." *Pastor v. State Farm Mutual Automobile Insurance Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007). Zieba's mere desire "to hold Blue Cross to account for its actions" by grouping together small claims of individuals, is insufficient to support class certification in the absence of a showing that common issues will predominate.

¶ 52                                       III. CONCLUSION

¶ 53 For the foregoing reasons, we reverse the trial court's order granting class certification and remand for further proceedings. While the court retains discretion on remand to allow Zieba another opportunity to seek class certification, the present record provides no basis to support certification as to liability or damages or both.

¶ 54 Reversed and remanded.